**UNITED STATES of America, Appellee,**

v.

**Fevzi EKINCI, Defendant–Appellant.**

**No. 1836, Docket 95–1655.**

United States Court of Appeals, Second Circuit.

Argued June 24, 1996.

Decided Dec. 3, 1996.

Stanley A. Teitler, New York City (Scott H. Goldstein, Stanley A. Teitler, P.C., New York City, of counsel), for Defendant–Appellant.

Faith Gay, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Eastern District of New York, Susan Corkery, Assistant United States Attorney, Brooklyn, NY, of counsel), for Appellee.

Before: MINER, JACOBS, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Defendant appeals from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson Jr., *Judge* ) following a jury trial in which he was convicted of violating the Drug Abuse Prevention and Control Act ("Controlled Substances Act"), 21 U.S.C. § 801 *et seq.* Count I charged him with conspiracy to dispense, distribute and possess with intent to distribute glutethimide without a legitimate medical purpose in violation of 21 U.S.C. §§ 841(a) & 846. Count II charged defendant with dispensing, distributing and possessing with intent to distribute glutethimide, in violation of 21 U.S.C. § 841(a)(1), within 1000 feet of a school. 21 U.S.C. § 860 (previously codified at 21 U.S.C. § 845a). It was error for the court to include "dispense" in the charge on Count II since § 860 does not provide an enhanced penalty for dispensing a controlled substance within 1000 feet of a school. Because we cannot determine whether the jury found that defendant dispensed or found that defendant distributed glutethimide within 1000 feet of a school, we cannot say that the error was harmless. The conviction on Count II is vacated and the case is remanded for further proceedings in accordance with this opinion. We have reviewed defendant's other arguments and find them to be without merit; the conviction on Count I is affirmed.

## I. FACTS

Following a jury trial, we review the facts found by the jury in the light most favorable to the government. *United States v. LaPorta*, 46 F.3d 152, 162 (2d Cir.1994). Defendant is an eighty-two-year-old doctor who practiced medicine for more than forty years in the Red Hook section of Brooklyn. At trial, the government presented evidence which showed that the defendant was involved in a drug conspiracy in which he provided prescriptions lacking a legitimate purpose for glutethimide to "patients." Several of these "patients" were government witnesses who described the following scheme in their testimony before the jury. A

man named Charlie approached the individuals and recruited them to pose as "patients" in exchange for ten or twenty dollars. He instructed the "patients" to go to the doctor's office and tell the doctor they had a sleeping problem. Charlie gave the "patients" $100 to pay the doctor for a prescription. After a cursory examination the doctor wrote out a prescription for glutethimide; none of the "patients" ever asked for the drug by name. The "patients" gave the doctor the money, left the office, and immediately gave the prescriptions to the person outside of the office who in turn gave them ten or twenty dollars. Several of the "patients" testified that the doctor never gave them any drugs; he simply wrote a prescription for them.

At least two witnesses testified that they saw the defendant speaking to the men outside of his office. One of the witnesses testified that one day she heard the defendant tell the man outside his office that he only wanted ten more "patients" on that day.

The government called an expert in controlled substances who testified that glutethimide is a drug which is highly subject to misuse, but that also has some medical utility. He explained that glutethimide could be combined with codeine to produce a "high" similar to that of heroin. He indicated that glutethimide is out of favor with the medical community because of the risk of illegitimate use and because it may be fatal if taken in excess.

The Drug Enforcement Administration ("DEA") Investigator testified that 3211 of the 3300 triplicate prescriptions written by the defendant from March 1992 to April 1993 were for glutethimide.[1] In addition, from early 1992 until the time of his arrest, defendant wrote the vast majority of all of the glutethimide prescriptions in New York City.

The DEA Investigator offered uncontroverted testimony that defendant's medical office was located within 1000 feet of a public school. Finally, the DEA Investigator reported that after his arrest, defendant stated that he knew that glutethimide causes a heroin-type high when combined with codeine,

but that "when the prescription leaves the office with the patient it is not his responsibility, it's a law enforcement concern."

Defendant's case was limited to the testimony of several seemingly legitimate patients who testified that he was a good doctor who had provided them with medical care for many years.

## II. DISCUSSION

### 1. *The Erroneous Instructions on Count II*

■ Defendant raises several issues on appeal. We agree with his contention that his conviction on Count II should be reversed because the jury charge included an element that is not found in the statute. Since § 860 provides an enhanced penalty for violating § 841(a) by distributing, possessing with intent to distribute, or manufacturing, but not by dispensing, controlled substances within 1000 feet of a school, we hold that it was error for the court to instruct the jury that it could convict defendant under 21 U.S.C. § 860 if they found that he dispensed a controlled substance within 1000 feet of a school. We vacate the conviction and remand because we cannot find that the error is harmless since, based on the court's instructions, we cannot determine whether the jury found that defendant dispensed or found that he distributed glutethimide within 1000 feet of a school.

Before discussing the specific relevant statutory provisions, it is helpful to review the general framework of the statute. The Controlled Substances Act is aimed at combatting the illegal manufacturing, dispensing and distributing of controlled substances, many of which have some legitimate medical purpose(s). *See* 21 U.S.C. § 801. In order to protect physicians and others who legally handle controlled substances from prosecution under the statute, it contains an elaborate registration and reporting scheme which enables such individuals to handle controlled substances without fear of prosecution. *See* 21 U.S.C. §§ 821–830. Such persons are

---

1. New York requires triplicate prescriptions for certain controlled substances. N.Y. Pub. Health Law § 3332 (McKinney 1996).

subject to special, relatively lenient penalties if they violate the registration provisions of the statute. *See* 21 U.S.C. §§ 842–843. Section 841 is the penalty provision for unlawful handling of controlled substances either by medical practitioners or other traffickers in drugs. The Supreme Court has held that practitioners who are registered under the Controlled Substances Act, like defendant, may be prosecuted under § 841 "when their activities fall outside the usual course of professional practice." *United States v. Moore,* 423 U.S. 122, 124, 96 S.Ct. 335, 337, 46 L.Ed.2d 333 (1975). Finally, § 860 provides for enhanced penalties, up to double the sentence authorized in § 841(b), for anyone who violates § 841(a) by distributing, possessing with intent to distribute, or manufacturing a controlled substance within 1000 feet of a school.

Defendant complains that the court committed error by creating a new offense when it instructed the jury that it could find that defendant violated § 860 if it found that defendant dispensed glutethimide within 1000 feet of a school. We agree with the defendant. Section 860 does not simply punish all violations of § 841(a); rather, it is limited to particular violations of § 841(a). Specifically, § 860 provides an enhanced penalty for "[a]ny person who violates section 841(a)(1) ... of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance [within 1000 feet of a school]." 21 U.S.C. § 860(a). Notably, the statute does not provide for an enhanced penalty for someone who violates § 841(a)(1) by dispensing a controlled substance within 1000 feet of a school.

The government does not offer any persuasive explanation for why "dispense" was included in the indictment for Count II, nor why it was not error for the court to include "dispense" in the jury instructions for Count II. In an effort to explain why the court allowed such a blatant departure from the statute, we consider, and reject, two possible explanations for including "dispense" in the instructions on Count II. First, we review the legislative history of § 860, which clearly demonstrates that Congress did not inadvertently omit "dispense" from the list of pro-

hibited activities under § 860. Further, given the statutory definitions of "dispense" and "distribute", we do not accept the argument that, for purposes of prosecution under § 860, "dispense" and "distribute" have basically the same meaning thereby making any difference a mere technicality.

Study of the legislative history of § 860 reveals that the omission of "dispense" is not due to legislative oversight. The original version of the statute, passed in 1984, provided for an increased penalty for anyone who violated § 841(a)(1) by distributing a controlled substance within 1000 feet of a school. 21 U.S.C. § 845a (1984). In 1986, the statute was amended to include manufacturing, and this applied to "any person who violates section 841(a)(1) ... by distributing or manufacturing." 21 U.S.C. § 845a (1988); *see* 132 Cong.Rec. H11,219–02, § 1104 (daily ed. Oct. 17, 1986). Again in 1988, the statute was amended; this time "possessing with intent to distribute" was added to the list of offenses subject to an enhanced penalty. 134 Cong.Rec. S15,785–01, § 2254 (daily ed. Oct. 13, 1988); *see also United States v. Wake,* 948 F.2d 1422, 1430 (5th Cir.1991)(reviewing legislative history of 21 U.S.C. § 860), *cert. denied,* 504 U.S. 975, 112 S.Ct. 2944, 119 L.Ed.2d 569 (1992). By contrast, § 841(a)(1) has not been altered—it has always included distribution, possession with intent to distribute, dispensing, or manufacturing. 21 U.S.C. § 841(a) (1994). Congress has twice broadened § 860, adding offenses included in § 841(a), but it has never added "dispense" to § 860, although dispensing has always been an offense under § 841(a). Thus, it is clear that the omission of "dispense" is deliberate, rather than inadvertent. Because "dispense" is not subject to an enhanced penalty under the statute, the only other plausible explanation for including it in the instruction would be if "dispense" and "distribute" have the same meaning under the statute.

We now consider whether "dispense" and "distribute" have the same meaning under the statute. Section 841(a)(1) provides as follows:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

Section 802 of the statute includes the following definitions:

(10) The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance. . . .

(11) The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance. . . .

(8) The terms "deliver" or "delivery" mean the actual, constructive, or attempted transfer of a controlled substance. . . .

(21) The term "practitioner" means a physician, . . . or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.

(27) The term "ultimate user" means a person who has lawfully obtained, and who possesses, a controlled substance for his own use or for the use of a member of his household. . . .

21 U.S.C. § 802. These statutory definitions clearly indicate that "distribute" and "dispense" have different meanings because "distribute" is defined as a delivery other than by dispensing or administering. Although we think the plain language of the statute demonstrates that the court erred, we now consider the government's argument.

The government suggests, by citing cases from other circuits, that any difference between "dispense" and "distribute" is merely technical and thus unimportant in this instance. Other courts have upheld convic-

tions under § 841 and § 846 for a practitioner who writes prescriptions lacking a legitimate medical purpose, even when the practitioner is indicted for distribution rather than dispensing. *See, e.g., United States v. Flowers*, 818 F.2d 464, 467 (6th Cir.) ("[T]he writing of the illegal prescriptions completes all the elements of the offense prohibited by section 841(a)(1)."), *cert. denied*, 481 U.S. 1056, 107 S.Ct. 2196, 95 L.Ed.2d 851 (1987). Many of the cases that have so held have reasoned that the difference between "distribute" and "dispense" is simply a matter of wording. *United States v. Nechy*, 827 F.2d 1161, 1169 (7th Cir.1987) ("[T]here is no difference in proof, penalty, etc. between the crimes of distributing and of dispensing a controlled substance. The only difference is nomenclature; a pharmacist is a dispenser while someone who is not a pharmacist, doctor, etc. is a distributor."); *United States v. Genser*, 710 F.2d 1426, 1429–30 (10th Cir.1983) ("The sole difference we perceive between 'distribution' and 'dispensation' is that only a doctor or other 'practitioner' can 'dispense' controlled substances, legally or otherwise."). But it is important to consider that all of the cases discussing the relationship between "dispense" and "distribute" are cases in which the defendant is being prosecuted under § 841, for distributing or dispensing a controlled substance, or under § 846, for conspiracy to distribute or dispense.[2] Under these statutory provisions, it may well be that there is no significant difference between dispensation and distribution. Notably, there is no difference whatsoever in penalty whether one is convicted under § 841 for dispensing or distributing.

The instant case is readily distinguishable, however, because we are considering defendant's challenge to his conviction under § 860 rather than § 841 or § 846. For whatever reason, Congress has restricted the enhanced penalties of § 860 to instances in which someone violates § 841 by distributing, possessing with intent to distribute, or manufac-

**2.** Despite extensive research, we have found no case in which a defendant was charged or convicted of *dispensing* a controlled substance with-

in 1000 feet of a school in violation of 21 U.S.C. § 860.

turing a controlled substance within 1000 feet of a school. As a result, the penalty is potentially twice as great for one who violates § 860 by "distributing" as opposed to "dispensing." Obviously, there is a real, non-technical distinction between "dispense" and "distribute" for purposes of prosecution under § 860. We hold that in the context of a conviction under § 860, the difference between "distribute" and "dispense" is more than a mere technicality or play on words. Because Congress specifically limited § 860 to instances in which someone violates § 841(a) by distributing, possessing with intent to distribute, or manufacturing a controlled substance, and because we have determined that "dispense" and "distribute" have different meanings, we conclude that the court erred when it instructed the jury that it could convict on Count II if it found that defendant dispensed a controlled substance within 1000 feet of a school.

### 2. Harmless Error Analysis

■■■ We now consider whether the conviction on Count II must be reversed due to the error contained in the jury instruction.[3] In *Chapman v. California*, the Supreme Court held that a constitutional error is harmless if the reviewing court can "declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The Supreme Court subsequently has applied harmless error analysis to jury instructions that misstated an element of a crime. *See Pope v. Illinois*, 481 U.S. 497, 502–03, 107 S.Ct. 1918, 1921–22, 95 L.Ed.2d 439 (1987). Such an error is harmless if "the jury's actual finding of guilty ... would surely not have been different absent the constitutional error." *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). In deciding whether the finding of guilt would have been the same absent the error, we examine the erroneous instruction in the context of the instructions as a whole as well as the evidence. *See United States v. Pimentel*, 83 F.3d 55, 60 (2d Cir.1996). If we

determine that the jury necessarily found all of the required elements of the offense that was erroneously charged, i.e., the functional equivalent of distribution within 1000 feet of a school, then the error is harmless. *Id.*

Applying these legal principles to the present case, we must determine whether there is any way the jury could have found that defendant dispensed a controlled substance within 1000 feet of a school. If the jury could have found that defendant dispensed the drugs, then the finding of guilt might not have been the same absent the error and we cannot say that the error is harmless. The court's instructions on Count II provide virtually no guidance as to what the jury found because they are both erroneous and incomplete. The court began by quoting the indictment, which itself was erroneous.[4] The court then set forth the four elements necessary for a conviction on Count II:

> That the defendant dispensed or distributed glutethimide.
>
> That the defendant did so knowingly and intentionally.
>
> That the defendant dispensed glutethimide other than for a legitimate medical purpose and not in the usual course of medical practice.
>
> And four, that the glutethimide was dispensed or distributed by the defendant within one thousand feet of a public school.

The court instructed the jury that the government could prove the first element of Count II by proving that "the defendant wrote a prescription for glutethimide." On the basis of these instructions, all we know is that the jury found that defendant (1) knowingly (2) wrote prescriptions other than for a legitimate medical purpose (3) within 1000 feet of a school. We cannot know whether the jury found that defendant was dispensing when he delivered the prescriptions or distributing. This is especially true since no definition of those terms was given to the jury. Since it is impossible to decipher whether the jury found that defendant dispensed the controlled substance within 1000

---

3. We apply harmless error review because defendant objected to the court's instructions on Count II.

4. The error in the indictment, and its significance, are discussed below.

feet of a school or whether he distributed it, the jury may have convicted the defendant of dispensing, which is not subject to an enhanced penalty under § 860. We have reviewed the instructions in their entirety and cannot be certain of the jury's basis of conviction. Thus, we cannot be sure that the error in the jury instructions was not harmless and did not prejudice the defendant.

Our holding is strengthened because Count II of the indictment, as read to the jury, charged a violation of § 860, and also improperly included dispensing: "defendant FEVZI EKINCI did knowingly and intentionally, by means of prescriptions lacking a legitimate medical purpose, dispense, distribute and possess with intent to distribute glutethimide." As explained above, one who dispenses within 1000 feet of a school is not subject to an enhanced sentence under § 860. "We may not uphold a criminal conviction if it is impossible to ascertain whether the defendant has been punished for non-criminal conduct." *Chiarella v. United States*, 445 U.S. 222, 237 n. 21, 100 S.Ct. 1108, 1119 n. 21, 63 L.Ed.2d 348 (1980) (quoted in *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir.1996)). For the same reasons that the court's inclusion of the term dispensing in Count II of the jury instructions was not harmless error, it is impossible to ascertain whether the defendant has been punished for non-criminal conduct. Both the jury instructions and the indictment erroneously indicated that dispensing a controlled substance within 1000 feet of a school was subject to an enhanced penalty under § 860. The district court's instructions make it impossible for this court to determine whether the jury convicted defendant for dispensing or distributing, and thus we are unable to be certain that the error was harmless. Since it is possible that defendant was convicted of non-criminal conduct, we vacate the conviction on Count II and remand for further proceedings.

### 3. *Other Claims*

 Defendant raises several additional claims which we find to be without merit. First, defendant maintains that the evidence was not sufficient to convict him on Count I. Viewing the evidence in the light most favorable to the government, as we must, *LaPorta*, 46 F.3d at 162, the evidence against defendant was more than sufficient, as the discussion above demonstrates. Defendant also argues that *United States v. Lopez*, ——— U.S. ———, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), mandates reversal of his conviction under 21 U.S.C. § 860. In *Lopez*, the Court held that a law which prohibited the possession of a firearm in a school zone was beyond Congress's Commerce Clause power because the law had nothing to do with commerce, no matter how broadly one might interpret commerce. *Id.* at ——— ———, 115 S.Ct. at 1630–31. In contrast, Congress itself has stated that trafficking in controlled substances affects interstate commerce, *see* 21 U.S.C. § 801(3), (4), (6), and thus not violate the Commerce Clause. *See United States v. Zorrilla*, 93 F.3d 7, 8–9 (1st Cir. 1996). Defendant also complains that prosecutorial and judicial misconduct deprived him of a fair trial. These claims are meritless. While this trial certainly was not a model of judicial and prosecutorial practice, the issues defendant raises are not "so prejudicial that [they] denied [the defendant] a fair, as opposed to a perfect, trial." *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985). Defendant complains that the government's question regarding his loss of his medical license was grossly improper and prejudiced the jury. The court allowed the question, but then realized it had made a mistake and gave a curative instruction. This question did not unduly prejudice the defendant. Finally, defendant complains that the court permitted several witnesses to repeat hearsay statements before the jury. All of the statements are covered by exceptions to the hearsay rule contained in the Federal Rules of Evidence. *See* Fed. R.Evid. 801(d)(2)(A) (admission by a party-opponent); Fed.R.Evid. 801(d)(2)(E) (admission of a coconspirator during the course of and in furtherance of the conspiracy).

### III. CONCLUSION

We hold that it was error for the court to include "dispense" in the instruction on Count II, and that the error was not harmless. We have reviewed all of defendant's

other claims and find them to be without merit. Accordingly, the judgment of the district court is affirmed as to Count I and vacated and remanded as to Count II.