**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4143

ROBERT C. WOODSON, JR., a/k/a
"D.C. Rob,"
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4168

DAVID LEE HILL,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-96-370-A)

Argued: April 9, 1998

Decided: September 18, 1998

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
CHAMBERS, United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Joseph John McCarthy, DELANEY, MCCARTHY, COLTON & BOTZIN, P.C., Alexandria, Virginia, for Appellant Hill; Gregory Bruce English, ENGLISH & SMITH, Alexandria, Virginia, for Appellant Woodson. Leslie Bonner McClendon, Assistant United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In 1996 Robert C. Woodson and David Lee Hill were indicted on a variety of drug trafficking and conspiracy charges, and Woodson was indicted on firearms-related charges. The district court ordered the conspiracy charges severed, and trial proceeded on the substantive counts. The jury convicted Woodson and Hill of a number of drug offenses, and it also convicted Woodson of several firearms offenses. Woodson and Hill now appeal, and we affirm.

I.

On February 27, 1992, Woodson fronted cocaine base ("crack") to Rodney Grayson, who was 18 years old at the time and who for years had been selling crack he obtained from Woodson. That same day, in a consensual pat-down of Woodson, police found approximately $4,700 in cash in his pocket. Woodson again fronted crack to Grayson on or about March 11, 1992. On August 17, 1996, police searched a parked GMC Yukon after discovering a fugitive who had been hiding on the truck's rear floorboard. Woodson, who arrived on the scene soon after the fugitive's apprehension, told police that the truck

2

belonged to him. Police subsequently searched the truck and discovered $2,451 in cash, and, with the aid of a drug dog, found 21.83 grams of crack, some marijuana, and a handgun in a compartment near the truck's console. A variety of Woodson's personal belongings were also found in the truck, and Woodson's fingerprint was found on the gun. Police arrested Woodson several weeks later when, during a foot chase, Woodson threw a bag into a yard as he ran. The police retrieved the bag and found it to contain 13.61 grams of crack.

On October 12, 1994, Hill sold crack to an undercover police officer and a cooperating informant, both of whom testified at trial. On September 10, 1996, police seized 16.06 grams of crack from the master bedroom of Hill's residence, along with approximately $4,100 in cash. Police also found Hill's driver's license and a pager near the crack and found drug-dealing paraphernalia in his bathroom.

At trial a number of police officers and informants testified against Woodson and Hill. Several of the informants testified about their illegal drug dealings with the defendants. Rodney Grayson and Leslie Nickens, for example, testified about drug purchases they had made from Woodson and Hill, including purchases that were not the subject of the indictment. Detective Chester Toney testified both as a fact witness and as an expert. During direct examination, the prosecutor asked Toney whether 21.83 grams, 13.61 grams, and 16.06 grams of crack -- the precise amounts in question in this case -- would be consistent with distribution. Toney responded that those quantities were consistent with distribution rather than personal use.

The government also presented evidence that the defendants failed to file federal income tax returns for several years. Also admitted were the drugs and handgun seized from the truck Woodson said he owned.

The jury convicted Woodson of two counts of distribution of crack within 1,000 feet of a playground, 21 U.S.C. §§ 841(a)(1), 860(a), two counts of distribution to a minor, 21 U.S.C.§§ 841(a)(1), 859, two counts of possession with intent to distribute crack, 21 U.S.C. § 841(a)(1), one count of carrying a firearm during and in relation to a drug crime, 18 U.S.C. § 924(c), and additional counts of possession of a firearm and ammunition as a convicted felon, 18 U.S.C.

3

§§ 922(g)(1), 924(a)(2). The jury convicted Hill of distribution of crack within 1,000 feet of a playground and of possession with intent to distribute crack. At sentencing, the court found that both defendants were responsible for the distribution of more than 1.5 kilograms of crack. The court sentenced Woodson to life plus sixty months in prison and sentenced Hill to 262 months in prison.

II.

Woodson and Hill argue that the district court erred in allowing an expert witness, Detective Chester Toney, to testify that the exact quantities of drugs at issue in this case were consistent with distribution. Rule 704(b), Fed. R. Evid., prohibits an expert witness in a criminal case from stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Thus, defendants argue, an expert may not opine as to whether a particular defendant intended to distribute a particular amount of drugs. They say that the district court erroneously allowed Detective Toney to offer such an opinion.

The circuits have not been consistent in enunciating the scope and application of Rule 704(b). Compare United States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995) (allowing testimony that the amount of drugs "found at the search site was consistent with distribution," as the testimony supplied no more than "suggested predicate facts"), and United States v. Speer, 30 F.3d 605, 609-10 (5th Cir. 1994) (allowing testimony that defendants' possession of 30 grams of cocaine was consistent with distribution), with United States v. Boyd, 55 F.3d 667, 672 (D.C. Cir. 1995) (finding error in admitting expert's testimony that a hypothetical situation involving drug possession, which tracked the facts of the case, was "consistent with `intent to distribute'"), and United States v. Lipscomb, 14 F.3d 1236 (7th Cir. 1994) (police expert's "modus operandi" testimony admissible only when "it is made clear . . . that the opinion is based on the expert's knowledge of common criminal practices, and not on some special knowledge of the defendant's mental processes").

We believe that the more cautious approach of the D.C. and Seventh Circuits makes sense. Questions to the expert and the expert testimony must avoid any reference to "intent" and the "context of the

4

testimony [must] make[ ] clear . . . that the opinion is based on knowledge of general criminal practices, rather than`some special knowledge of the defendant's mental processes.'" United States v. Smart, 98 F.3d 1379, 1388 (D.C. Cir. 1996) (quoting Lipscomb, 14 F.3d at 1243); see also United States v. Tomes, 136 F.2d 176 (D.C. Cir. 1998). Under this approach, a police expert is free to testify about what constitutes a distribution-sized quantity of drugs. It is the job of the jury, however, to decide whether a defendant found in possession of a particular quantity of drugs had the intent to distribute it.

In this case neither the prosecutor in her questions nor Detective Toney in his answers used the word "intent." Nor did the detective claim any special knowledge of the defendants' mental states. In her direct examination the prosecutor asked Detective Toney a series of questions about the "indicia of drug trafficking," the "quantities of crack [that] are normally bought and sold" on the streets, and the size and price of a "user dose" or "hit" of crack. From the answers to these questions alone, a jury could have inferred that the crack possessed in this case was intended for distribution. That does not matter, the defendants argue. They argue that the prosecutor, by asking for and eliciting an answer that the precise amounts of crack seized in this case were consistent with distribution, went over the line in violation of Rule 704(b). While the question may have pushed the limits of the rule, we believe that the question and the answer were technically within the bounds drawn by the more cautious cases.

Still, if the prosecutor's conclusory question about the exact amounts of crack in this case went a bit too far, the error was harmless. As we indicated above, Detective Toney testified about the ranges of crack quantities in individual street sales. In addition, he also testified about drug traffickers' use of beepers and cellular phones, explained why dealers transact their business in cash, and detailed distributors' use of baggies, razor blades, and scales. That testimony, in combination with the other evidence about (1) the weight of the drugs seized, (2) the cash, beeper, and paraphernalia (baggies, razor blades, and scales) found at Hill's residence, (3) the beeper receipt in Woodson's name, and (4) actual drug dealing by both defendants, together provided more than ample grounds for the jury to find the intent to distribute. See Smart , 98 F.3d at 1390 & n.15

5

(detailing the testimony prior to the expert's "forbidden reference" to intent and finding the error harmless).

III.

Defendants next argue that the trial court should have excluded evidence of Woodson's failure to file income tax returns for 1991, 1992, 1994, and 1995 and Hill's failure to file returns for 1991-1995.

The government first argues that the failure-to-file evidence was admissible under United States v. Mitchell, 733 F.2d 327, 331 (4th Cir. 1984). In Mitchell we held that evidence of a defendant's failure to file income tax returns was admissible to show that the defendant had no legitimate source of money for large cash purchases he had made. The government's brief to us does not make the case for admissibility under Mitchell. The government, in arguing admissibility before the district court, said that Hill had bought a Lexus with cash. But Hill contends in his brief to us that the government never proved that he bought the car, a claim that the government does not dispute in its response. Similarly, the government has not pointed to any specific purchases by Woodson that would allow Mitchell to apply.

The government also relies on United States v. Boyd, 53 F.3d 631 (4th Cir. 1995), where the prosecution used failure-to-file evidence to impeach the defendant's testimony that he did not live the spendthrift lifestyle of a drug dealer, but lived a normal lifestyle in keeping with his regular income. Here, the government says that Woodson's failure to file was admissible because he told police when he was arrested (with a wad of cash in his pocket) that he had been gambling. However, the statement about gambling was introduced by the government, not Woodson, so the failure-to-file evidence did not qualify as impeachment or rebuttal under Boyd.

Finally, the government argues that the failure-to-file evidence was admissible under Fed. R. Evid. 404(b) to show "`proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' including a lack of legitimate income." Appellee's Br. at 33 (quoting Rule 404(b)). We are not persuaded by this conclusory argument. The government offered unchallenged evidence that drug dealers transact their business in cash. Moreover, it

6

does not appear that the defendants themselves put in issue any claim that they had legitimate income. As a result, the evidence of the repeated prior bad acts (failure to file) was not relevant or "necessary in the sense that it [was] probative of an essential claim or an element of the offense." United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997).

In sum, the government, in its abbreviated argument, has not convinced us that the evidence of non-filing was admissible in this case. The error in admitting this evidence was harmless, however, given the quantity and character of the other evidence presented against the defendants. The jury heard testimony from several persons who testified that they had bought drugs from Hill and Woodson. The jury saw the drugs and handgun seized from the truck Woodson said was his. Chester Toney, a detective working undercover, testified that he had bought drugs from Hill. And the jury heard testimony about the items found in Hill's bedroom and bathroom, items that included crack and other indicia of drug trafficking.*

IV.

The next three issues may be dealt with in fairly short order. Defendants argue that 21 U.S.C. § 860(a), which outlaws certain drug offenses within 1,000 feet of a public school or playground, is unconstitutional under United States v. Lopez, 514 U.S. 549 (1995). Defendants argue that § 860(a) goes beyond Congress' power under the Commerce Clause. Several of the circuits have addressed similar claims and have found them to be without merit. See e.g., United States v. Allen, 106 F.3d 695, 700-701 (6th Cir.), cert. denied, 117 S. Ct. 2467 (1997); United States v. Ekinci , 101 F.3d 838, 844 (2d Cir. 1996); United States v. McKinney, 98 F.3d 974, 977-79 (7th Cir.), cert. denied, 117 S. Ct. 1119 (1997); United States v. Orozco, 98 F.3d 105, 106-07 (3d Cir. 1996); United States v. Zorrilla, 93 F.3d 7, 8-9 (1st Cir. 1996). Furthermore, this circuit, in upholding 21 U.S.C. § 841(a)(1), has held that drug trafficking is well within the post-

_____

*We reject the defendants' other arguments for the exclusion of the failure-to-file evidence, namely (1) that the government failed to lay a foundation that tax returns were due and (2) that the government failed to give adequate notice of its intent to use this evidence.

7

Lopez bounds of the Commerce Clause. See United States v. Leshuk, 65 F.3d 1105, 1111-1112 (4th Cir. 1995). We therefore conclude that Congress's enactment of § 860(a) was a lawful exercise of its power under the Commerce Clause.

Woodson argues that the evidence was not sufficient to convict him under 18 U.S.C. § 924(c) for carrying a firearm in connection with a drug trafficking offense. The gun was found in a compartment near the console of a parked GMC Yukon, just after the police found a fugitive hiding in the back. (The fugitive had crack and currency in his pockets.) When Woodson came out of a nearby house to see what the police were doing, he told the police that the truck was his (it was actually registered to his former girlfriend), that he had just driven it to the store, and that there might be some marijuana in it. The gun, with Woodson's fingerprint on it, was found in the front of the truck near some crack. In addition, some of Woodson's personal papers were found in the truck. Although the fugitive's presence in the truck makes the § 924(c) issue a closer one, the evidence was sufficient for the jury to find that Woodson had carried the gun in connection with drug trafficking.

We also conclude that the trial court did not abuse its discretion in admitting evidence of prior incidents of defendants' drug dealing that were not intrinsic to the crimes charged. In particular, defendants object to the testimony of Leslie Nickens and Rodney Grayson, who said that they had been supplied with drugs by Woodson and Hill in incidents not charged in the indictment. This objection is not well taken. Defendants were found in possession of certain drugs, but the government had no direct proof that they intended to distribute these drugs. As a result, evidence of past drug selling was relevant and necessary to show intent to distribute, and it was admissible under Rule 404(b). See United States v. Percy, 765 F.2d 1199, 1203-04 (4th Cir. 1985).

V.

Hill raises two sentencing issues. First, he contends that his ten-level enhancement for relevant conduct resulted in a sentence amounting to "a tail that wags the dog" of the substantive offenses, thus presenting a due process problem. According to Hill, this prob-

8

lem could have been alleviated only if the district court had used a clear and convincing or reasonable doubt proof standard in determining relevant conduct. It was reversible error, Hill argues, for the court to use the preponderance of the evidence standard. We disagree. We are bound by our precedent that relevant conduct may be proved by a preponderance of the evidence. See United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994).

Hill also argues that he should have been allowed to cross-examine the sources mentioned in an affidavit executed several weeks prior to sentencing by Detective Timothy Kotlowski, who worked on this case. The affidavit recounted statements by various persons about Hill's history of distributing crack cocaine, statements that would inform an assessment of Hill's "relevant conduct" under the Guidelines. We need not address the substance of this issue because the district court, in calculating the amount of crack Hill had sold, chiefly relied on Hill's own statement, which he made to three police officers, about the quantity of crack he had sold.

VI.

We have considered defendants' remaining arguments and find them to be without merit.

The convictions of Hill and Woodson are affirmed, and Hill's sentence is affirmed.

AFFIRMED