*United States v. Belfiore*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand twenty-four.

PRESENT:

> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                             No. 22-20

MICHAEL BELFIORE,

*Defendant-Appellant*.

_____

For Defendant-Appellant: BEVERLY VAN NESS, New York, NY.

For Appellee: BRADLEY T. KING (David C. James, Charles N. Rose, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the December 22, 2021 judgment of the district court is **AFFIRMED**.

Michael Belfiore appeals from a judgment following a jury trial in which he was convicted of twenty-six counts of unlawful distribution of oxycodone and two counts of unlawful distribution of oxycodone causing death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The district court sentenced Belfiore to a term of 276 months' imprisonment, to be followed by three years' supervised release. On appeal, Belfiore raises a litany of challenges to his convictions, which we address in turn. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.     Sufficiency of the Evidence Related to Belfiore's Prescriptions for Edward Martin**

Belfiore first argues that there was insufficient evidence to support his conviction for causing the overdose of his patient, Edward Martin, by illegally prescribing him oxycodone.   We review challenges to the sufficiency of evidence *de novo*, *see United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021), and must decide whether, after "viewing the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility," "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Krivoi*, 80 F.4th 142, 155 (2d Cir. 2023) (emphasis and internal quotation marks omitted).   A defendant challenging the sufficiency of the evidence "bears a heavy burden," as this standard of review is "exceedingly deferential."   *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted).

Here, there was ample evidence from which a rational jury could find that Belfiore unlawfully prescribed oxycodone to Martin.[1] The record demonstrates that Belfiore was aware that Martin struggled with alcoholism and of the risks that oxycodone posed to alcoholics. The jury also heard testimony from a medical expert that the dosage Belfiore prescribed to Martin was outside the usual course of professional practice and well above the dosage prescribed by another physician who was seeing Martin at the same time as Belfiore. The evidence also shows that Belfiore never conducted a physical examination of Martin or asked him about his other prescriptions for oxycodone. In light of this evidence, we cannot say that it was unreasonable for the jury to have found Belfiore's guilt beyond a reasonable doubt. *See Ruan v. United States*, 597 U.S. 450, 467 (2022) (explaining that the government can prove intent "through circumstantial evidence," including "by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice'"); *see also, e.g., United States v. Ekinci*, 101 F.3d 838, 840, 844 (2d Cir. 1996) (rejecting sufficiency-of-the-evidence challenge where, among other things, there was evidence that doctor conducted

---

[1] Belfiore's reply brief specifically notes that he is not raising "any issue about [the] cause of [Martin's] death," and that he is only "assailing the sufficiency of the proof that he unlawfully distributed oxycodone" to Martin. Reply at 15. Accordingly, we do not address any evidence demonstrating that the oxycodone Belfiore prescribed to Martin was the cause of his death.

4

only "cursory examination[s]" before writing prescriptions, and expert testified to dangers of misuse associated with drug); *United States v. Maye*, 649 F. App'x 15, 16 (2d Cir. 2016) (rejecting sufficiency-of-the-evidence challenge where there was "ample circumstantial evidence" regarding the "usual course of medical practice," how defendant's medical records "demonstrated that he was not acting in the usual course of medical practice," and the inadequacy of defendant's examinations of patients).

## II.    Jury Instruction Regarding Mental State in Light of *Ruan*

Belfiore argues that the district court failed to instruct the jury that it had to find that Belfiore subjectively believed that his oxycodone prescriptions lacked a legitimate medical purpose. *See Ruan*, 597 U.S. at 467. Where, as here, a defendant failed to object to a jury instruction below, we review his challenge for plain error. *See United States v. Requena*, 980 F.3d 30, 48 (2d Cir. 2020). To demonstrate plain error, a defendant must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant]'s substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial

5

proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alterations and internal quotation marks omitted).

Belfiore's statute of conviction provides that it is "unlawful for any person knowingly or intentionally" to "distribute[]. . . a controlled substance" "[e]xcept as authorized" by statute. 21 U.S.C. § 841(a). In *Ruan*, the Supreme Court held that, if a criminal defendant produces evidence that his conduct was "authorized" for the purposes of section 841, the government "must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 597 U.S. at 457. On appeal, Belfiore argues that the district court's jury charge improperly focused on whether his oxycodone prescriptions met "an objective standard of reasonableness," rather than on his "subjective belief that his prescriptions were lawful." Belfiore Br. at 51.

Here, we need not determine whether the district court's section 841 instruction ran afoul of *Ruan* because, even if the instruction were erroneous, Belfiore cannot demonstrate that the error affected his substantial rights. *See Marcus*, 560 U.S. at 262. At trial, the evidence demonstrating Belfiore's subjective consciousness of guilt was overwhelming. For example, Belfiore was caught on tape warning an undercover officer (who was posing as a patient) that he should

6

not share narcotics with others because someone might turn out to have "a badge in their pocket" and "slap[] a handcuff on him." App'x at 100; *see also id.* at 98, 106 (agreeing to prescribe undercover officer oxycodone despite representation that he had illegally been accepting pills from his girlfriend and another of Belfiore's patients). Similarly, when the undercover officer told Belfiore that he had been sharing the oxycodone Belfiore prescribed with his girlfriend, Belfiore agreed to set up an appointment with the girlfriend and warned only that this ongoing sharing would "screw[] up" the officer's pill "count towards the end of the month." *Id.* at 120–21. Belfiore was also recorded telling the undercover officer that Belfiore was "set up for disaster" because the officer's drug tests were negative for oxycodone and other pain-management prescriptions and because there were no pharmacy records indicating where the officer was having the prescriptions filled – which was an issue of concern for Belfiore since "according to the state, [Belfiore was] giving [him] prescriptions" and "[t]he state looks at" these records. *Id.* at 141–44. These statements support Belfiore's subjective awareness that his conduct was unlawful. The government presented additional evidence that Belfiore falsified medical records; urged a social worker to submit a false affidavit in a medical malpractice case claiming that Belfiore had arranged an

7

emergency appointment on behalf of a patient who died from an overdose of a drug that Belfiore had prescribed; and continued to prescribe oxycodone to a patient despite his knowledge of the patient's illicit drug use, drug tests reflecting that the patient was not taking his medications as prescribed, and the patient's uncorroborated claims that his medication had been stolen and he had run out of medication early.

Based on this substantial evidence that Belfiore was not prescribing oxycodone in subjective good faith, we conclude that there is no possibility that the alleged error "affected the outcome" of the trial. *Marcus*, 560 U.S. at 262 (internal quotation marks omitted); *see also Ruan*, 597 U.S. at 467 ("[T]he more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely . . . [it is] that the [g]overnment has carried its burden of proving knowledge." (internal quotation marks omitted)); *United States v. Leonard*, 738 F. App'x 7, 10–11 (2d Cir. 2018). We therefore decline to disturb Belfiore's conviction on this basis.

## III. Interested-Witness Jury Instruction

Belfiore also contends that the district court's interested-witness instruction was plainly erroneous because it undercut the presumption of innocence when

8

applied to his testimony, thereby requiring reversal of his convictions. Specifically, Belfiore points to our decision in *United States v. Solano*, in which we held that an instruction that a witness's interest in the outcome of the case "gives him a motive to testify falsely is contrary to the presumption of innocence" when a defendant chooses to testify at his own trial. 966 F.3d 184, 197 (2d Cir. 2020). Because Belfiore did not object to this instruction below, we again review this challenge for plain error. *See id.* at 193–94.

Even assuming that the district court's interested-witness instruction was erroneous in light of *Solano*, we cannot find that this error affected Belfiore's substantial rights. *See Marcus*, 560 U.S. at 262. As the government notes, the jury in this case was presented with substantial documentary evidence of Belfiore's guilt – including transcripts of undercover videos, falsified medical records indicating that Belfiore had inquired of his patients' pain scales and performed physical examinations when neither occurred, and drug test results demonstrating that Belfiore knew his patients were not taking oxycodone as prescribed and/or were using the medication along with illicit substances. Unlike *Solano*, the jury in this case "had a substantial body of testimonial and documentary evidence before it." *United States v. Kenner*, No. 21-2289, 2023 WL 4692508, at *3 (2d Cir. July 24,

2023) (declining to disturb defendant's conviction because the error did not "affect [defendant's] substantial rights"), *cert. denied*, 144 S. Ct. 616 (2024). Given this evidence, this case "did not rise or fall . . . exclusively on [Belfiore's] credibility," *id.*; the jury was able to assess first-hand a variety of nontestimonial evidence relevant to Belfiore's state of mind and credibility as a witness, *see Solano*, 966 F.3d at 198 (concluding that the instruction was prejudicial because "the knowledge element would turn squarely on [competing] assessments of credibility"). We are therefore convinced that the evidence "was so substantial that the jury would have convicted him absent any error in the jury charge." *United States v. Munoz*, 765 F. App'x 547, 552 (2d Cir. 2019). Belfiore therefore has failed to show "a reasonable probability that the error affected the outcome of [his] trial." *Solano*, 966 F.3d at 193 (internal quotation marks omitted).

## IV. Admission of John Ortega File and Prescription History

Belfiore additionally challenges the district court's admission of two categories of evidence at trial: evidence regarding Belfiore's uncharged conduct in the course of treating his patient John Ortega and data concerning Belfiore's history of prescribing oxycodone over a four-year period. We generally review a district court's evidentiary ruling "under a deferential abuse of discretion

10

standard," and will "disturb [its] ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Williams*, 930 F.3d 44, 58 (2d Cir. 2019) (internal quotation marks omitted). But because Belfiore did not object to the admission of his prescription history at trial, we review the district court's decision to admit that evidence for plain error.[2] *See United States v. Pierce*, 785 F.3d 832, 840 (2d Cir. 2015).

Belfiore first contends that the district court erroneously admitted Ortega's patient file pursuant to Federal Rule of Evidence 404(b), which governs the admissibility of crimes, wrongs, or acts other than those charged in the indictment. In determining whether a district court properly admitted evidence under Rule 404(b), we consider whether "(1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. McPartland*, 81 F.4th 101, 115 (2d Cir. 2023) (internal quotation marks omitted). We will deem a district court's erroneous admission of evidence to have been

---

[2] For the purposes of this order, we assume – without deciding – that Belfiore's counsel lodged a valid objection at trial to the admission of the evidence concerning Ortega.

harmless if we can "conclude with fair assurance that the evidence did not substantially influence the jury." *United States v. Al-Moayad*, 545 F.3d 139, 164 (2d Cir. 2008) (internal quotation marks omitted); *see also United States v. Ramirez*, 609 F.3d 495, 501 (2d Cir. 2010) (emphasizing that "the strength of the government's case is the most critical factor in assessing whether error was harmless").

We can discern no error in the district court's admission of the Ortega file. We agree with the district court that the Ortega file was "highly probative evidence" of Belfiore's "intent" and "lack of mistake" in prescribing oxycodone without a legitimate medical purpose, and that this probative value was not "substantially outweighed" by the evidence's prejudicial effect.   App'x at 192; *see also* Fed. R. Evid. 404(b)(2) (explaining that evidence "may be admissible for . . . proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").   The district court also delivered a comprehensive limiting instruction regarding the purposes for which the jury could consider this evidence.   *See* App'x at 194–95 (instructing the jury that this evidence was admitted for the "limited purpose of background and alleged state of mind of the defendant with respect to the charged crimes" and that it was not permitted to consider this evidence "as a substitute for proof that the defendant

committed the crimes charged in the [i]ndictment beyond a reasonable doubt" or as "proof that the defendant has a criminal personality or bad character"). We therefore see no abuse of discretion in the district court's decision to admit this evidence. *See, e.g.*, *United States v. Lasher*, 661 F. App'x 25, 28–29 (2d Cir. 2016).[3]

Belfiore next argues that he was denied a fair trial when the district court admitted four years' worth of data concerning his oxycodone prescription history as a rebuttal to his entrapment defense. When a defendant has presented credible evidence that his actions were induced by a government agent, the government must prove "beyond a reasonable doubt that the defendant was predisposed to commit the crime." *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021) (internal quotation marks omitted). The government may prove predisposition by showing "(1) an existing course of criminal conduct similar to the crime for which the defendant is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *United States v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014)

---

[3] Though not argued by the parties, the Ortega file would also have been admissible in order to rebut Belfiore's entrapment defense, as it demonstrates Belfiore's "willingness to commit the crime for which he is charged" of unlawfully distributing oxycodone. *United States v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014).

(internal quotation marks omitted); *see also United States v. Cromitie*, 727 F.3d 194, 208 (2d Cir. 2013) (noting that "any relevant evidence of what a defendant says or does before first being approached by [g]overnment agents . . . is admissible" (emphasis, citation, and internal quotation marks omitted)). Belfiore's prescription history was plainly relevant to rebut any contention that he was unfairly "press[ed]" and not normally predisposed to prescribe oxycodone. Gov. App'x at 216. Moreover, the district court again gave a limiting instruction to mitigate any prejudice that might result from the admission of this data. Belfiore's argument that the district court committed plain error in admitting this data is therefore meritless.

Furthermore, even if we were to assume that these categories of evidence were improperly admitted, any such error would have been harmless in light of the strength of the government's case. Accordingly, Belfiore's arguments that the challenged evidence was not relevant and was overly prejudicial are unavailing in any event.

## V. Cumulative Error

Finally, Belfiore argues that he is entitled to a new trial because the cumulative effect of these errors rendered his trial fundamentally unfair. Belfiore

14

is correct "that the effect of multiple errors in a single trial may cast such doubt on the fairness of the proceedings that a new trial is warranted, even if no single error requires reversal." *United States v. Fell*, 531 F.3d 197, 233 (2d Cir. 2008). When conducting such an analysis, we "aggregate[] only actual errors to determine their cumulative effect." *United States v. Gabinskaya*, 829 F.3d 127, 135 (2d Cir. 2016) (internal quotation marks omitted).

As noted above, the government introduced ample evidence that Belfiore was guilty of the crimes charged at trial, including transcripts reflecting that Belfiore continued to prescribe oxycodone to an undercover officer despite his admissions that he had illegally received and distributed oxycodone, spurious medical records reflecting inquiries and examinations that had not occurred, drug test results demonstrating that Belfiore continued to prescribe oxycodone despite evidence his patients were not taking their medication as directed (if at all), testimony that Belfiore had encouraged perjury in connection with the overdose of one of his patients, and four-years' worth of oxycodone prescription data. None of Belfiore's arguments on appeal – whether considered separately or cumulatively – lead us to doubt the fairness of that proceeding. *See, e.g.*, *United States v. Zemlyansky*, 908 F.3d 1, 18 (2d Cir. 2018); *United States v. Ulbricht*, 858 F.3d

71, 123 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585

U.S. 296 (2018).   We therefore reject Belfiore's cumulative-error argument.

*       *       *

We have considered Belfiore's remaining arguments and find them to be

without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court