10-2493-cr
*United States v. Price*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of October, two thousand eleven.

PRESENT:     JOHN M. WALKER, JR.,
                      CHESTER J. STRAUB,
                      DEBRA ANN LIVINGSTON,
                                  *Circuit Judges.*

---

UNITED STATES OF AMERICA,
            *Appellee*,

-v.-                                                           No. 10-2493-cr

GERARD PRICE,
            *Defendant-Appellant*.

---

For Appellee:                     EMILY BERGER, DANIEL S. SILVER, BERIT W. BERGER, Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney, Eastern District of New York, Rochester, New York

For Defendant-Appellant:     GUY OKSENHENDLER, New York, New York

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Defendant-Appellant Gerard Price ("Price") appeals from a judgment of the United States District Court for the Eastern District of New York (Garaufis, *J.*), filed June 21, 2010, convicting him, after trial by jury, of racketeering in violation of 18 U.S.C. § 1962(c); racketeering conspiracy in violation of 18 U.S.C. § 1962(d); murder in aid of racketeering in violation of § 1959(a)(1); drug-related homicide in violation of 21 U.S.C. § 848(e)(1)(A); conspiracy to maintain narcotics stash houses in violation of 21 U.S.C. § 846; illegal use of firearms in violation of 18 U.S.C. § 924(c)(1)(A); and witness tampering in violation of 18 U.S.C. § 1512(b)(1); and sentencing him to life imprisonment, three years' supervised release, special assessments totaling $700, and restitution of $60,000. On appeal, Price argues that he is entitled to a new trial due to ineffective assistance of counsel, that there was insufficient evidence to support the jury's verdict as to certain counts, and that the district court abused its discretion in denying his motion for a new trial because the jury's verdict went against the weight of the evidence. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

## I. Ineffective Assistance of Counsel

The Sixth Amendment guarantees effective assistance of counsel to criminal defendants. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant claiming unconstitutionally ineffective assistance of counsel must show both (1) that his trial lawyer's performance was deficient and (2) that he was actually prejudiced as a result. *See Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011) (citing *Strickland*, 466 U.S. at 692–93). "An attorney's representation is

2

deficient when it falls 'below an objective standard of reasonableness,' as determined by reference to 'prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). "Such performance is prejudicial when it is so poor as to 'undermine confidence in the outcome' of the proceedings — that is, it gives rise to 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). We review ineffective assistance of counsel claims *de novo*. *Id.*

"[W]e may take one of three actions when presented with a claim of ineffective assistance of counsel on direct appeal: '(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us.'" *United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009) (quoting *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000)) (second alteration in *Hasan*). This Circuit "prefer[s] to address claims of ineffective assistance of counsel in collateral proceedings, rather than on direct appeal," but "[w]hen the resolution of the claims is 'beyond any doubt or to do so would be in the interest of justice,' we may choose to entertain these claims on direct appeal." *Id.* at 170 (quoting *United States v. Matos*, 905 F.2d 30, 32 (2d Cir. 1990)).

First, Price argues that his trial counsel was ineffective in failing to move *in limine* to exclude or limit the use of Price's nickname, "Crime." This failure, however, was neither so unreasonable nor so prejudicial as to meet either prong of *Strickland*. Even "a course of action (or inaction) that seems risky, unorthodox or downright ill-advised" may not fall below the constitutional standard. *See Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996). In this case, defense counsel used the nickname during *voir dire* by asking jurors whether the use of that alias

3

would interfere with their ability to be fair and impartial. Evidently, defense counsel decided to strike jurors who would be prejudiced by the nickname rather than precluding its use at trial. This strategic decision was not unreasonable.

Moreover, Price suffered no prejudice. Although this Circuit has found likely prejudice where the prosecution addressed the jury with "frequently repeated, gratuitous invocation of [a defendant's suggestive] nickname" — in that case, "Murder," during a murder trial — the court emphasized that the prosecution's abuse of the name was the "main problem." *United States v. Farmer*, 583 F.3d 131, 146 (2d Cir. 2009). Here, by contrast, Price concedes that "the government did not overuse the nickname . . . during its opening or closing arguments." Even if witnesses frequently used the nickname, Price also concedes that all of the witnesses knew him as "Crime," and that occasional use would therefore have been permissible — thus inevitably revealing the nickname to the jury. *See Farmer*, 583 F.3d at 146 & n.7. These are not circumstances in which an objection to the use of the nickname would have had a reasonable probability of altering the result of the proceeding, and that is the standard required by *Strickland*, 446 U.S. at 694.

Second, Price argues that his trial lawyer's failure to object to New York Police Department Detective Joseph Fazzingo's testimony amounts to ineffective assistance of counsel. Fazzingo was a lay witness who testified to a number of undercover drug purchases including one from Price. At one point in his testimony, Fazzingo stated that cocaine is made from coca leaves, which generally come from Colombia, and that heroin is made from poppy plants, which mostly come from Afghanistan. Price argues that this was expert testimony, that a competent lawyer would have objected, and that without this testimony the jury might not have found an effect on interstate or foreign commerce (a necessary element of his racketeering charges).

4

Price could not have been meaningfully prejudiced by his lawyer's failure to object. Only a minimal effect on interstate commerce need be proven; indeed, "narcotics trafficking affects interstate commerce . . . regardless of where the raw materials originate." *United States v. Vasquez*, 267 F.3d 79, 90 (2d Cir. 2001) (emphasis omitted). Moreover, this Circuit has said that "direct testimony of an expert nature that cocaine is imported into the United States . . . . is unnecessary because a reasonable juror is surely capable of drawing the conclusion that a robbery undertaken with the object of stealing from a drug dealer three kilos of cocaine . . . would have had at least the required *de minimus* effect on interstate commerce." *United States v. Gomez*, 580 F.3d 94, 102 (2d Cir. 2009). The evidence demonstrated that the Pressley-Price enterprise purchased and sold thousands of dollars of crack cocaine and heroin every day. Because Price clearly was not prejudiced by his lawyer's failure to object to this testimony, we need not address whether the lawyer's conduct fell below the professional standard. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Third, Price argues that his lawyer incompetently failed to move to dismiss three of the racketeering acts charged as insufficiently pled in the indictment. Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "In order to state an offense, '[a]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, . . . state time and place in approximate terms.'" *United States v. Flaharty*, 295 F.3d 182, 198 (2d Cir. 2002) (quoting *United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983)) (alterations in *Flaharty*). In *Flaharty*, this Circuit held that

5

an indictment was sufficient even though it merely stated that unspecified drug felonies in violation of 18 U.S.C. §§ 841(a)(1) and 846 had been committed "[i]n or about and between 1992 and April 1998 . . . within the Eastern District of New York and elsewhere." *Id.* (alterations in original). Although Price's indictment did not name the alleged victims, its timeframes of one year or less are substantially narrower than the one approved in *Flaherty*. Its descriptions of the offenses' locations as "within the Eastern District of New York" are also more specific than the charges upheld in *Flaherty*. Moreover, attempted murder is a rarer and more distinctive crime than the generic drug felonies described in *Flaherty*'s indictment, which helped to put the defendant on notice as to the nature of the allegations. The indictment here was specific enough to satisfy Rule 7(c)(1); therefore, had Price's counsel moved to dismiss, the motion would have failed. And even if Price had been unsure of the individuals and dates in question, the government's disclosures under Federal Rule of Criminal Procedure 16 apprised him of which events were at issue, thus preventing him from being "prejudicially surprised." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995) (quoting *United States v. Miller*, 471 U.S. 130, 134 (1985)) (internal quotation marks omitted). In sum, Price suffered no prejudice from his counsel's failure to move to dismiss three of the racketeering acts from the indictment.

## II. Sufficiency of the Evidence

Price argues that the government's evidence was insufficient to support his conviction for three of the charged offenses: (1) the murder-in-aid-of-racketeering charge in Count Three; (2) two of the predicate racketeering acts charged in Count One of the indictment, the murder of Ronald Chavis and the attempted murder of Michael Brown; and (3) witness tampering. "The test for

6

sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)). We must view the evidence in the light most favorable to the government, which entails "crediting every inference that the jury might have drawn in favor of the government." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (quoting *United States v. Temple*, 447 F.3d 130, 136–37 (2d Cir. 2006)).

First, Price contends that his conviction of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a) was not supported by sufficient evidence. As defined by statute, the offense includes commission of an underlying violent crime (in this case, murder) "for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity." 18 U.S.C. § 1959(a). This purpose need not be the sole or even the principal motive; "[t]he motive requirement is satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Farmer*, 583 F.3d at 141 (quoting *United States v. Dhinsa*, 243 F.3d 635, 671 (2d Cir. 2001)).

According to witnesses, Price had said he was upset with Chavis and Brown for three reasons: they spent $10,000 of Price's drug money, they had not posted Price's bail promptly, and they were trying to talk with Price's girlfriend. At least the first two concerns, if not the third, clearly related to Price's position and status in the drug-trafficking enterprise; a jury could reasonably have concluded that Price believed the victims' actions had undermined his authority and reputation, and that murdering them would send a message that he was not to be trifled with. Moreover, evidence showed that drug sales Price made with Chavis and Brown were part of the

7

larger Pressley-Price enterprise, so the loss of Price's drug money may have directly harmed the enterprise. In addition, Price was impaired in continuing his role in the enterprise while imprisoned; thus, a reasonable jury could have concluded that the bail-related motivation was also tied to Price's position in the enterprise. Price's conviction of murder in aid of racketeering therefore was sufficiently supported by evidence.

Second, Price contests the sufficiency of the evidence for two predicate acts underlying his RICO conviction for "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Racketeering acts form a "pattern" only if they are "related" to the enterprise. *United States v. Bruno*, 383 F.3d 65, 84 (2d Cir. 2004). "Evidence of relatedness . . . may arise from facts external to the [charged] predicate acts, including the nature of the RICO enterprise itself." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992) (citations omitted). Price contends that there was no evidence that his murder of Chavis or his attempted murder of Brown was related to the Pressley-Price enterprise. However, as explained above, reasonable jurors could have concluded that Price's lost drug money and the victims' tardiness in posting his bail were his motives for shooting Chavis and Brown. The evidence clearly supported an inference that Price's drug dealing with Chavis and Brown was part and parcel of the Pressley-Price enterprise; indeed, one witness testified that the crack Price, Chavis and Brown sold was obtained from Price's brother. Moreover, unlike for the murder-in-aid-of-racketeering charge, "it is not necessary that the offense be in furtherance of the enterprise's activities for the offense to be related to the activities of the enterprise." *Bruno*, 383 F.3d at 84. Sufficient evidence therefore supported Price's RICO conviction predicated on, *inter alia*, the murder and attempted murder of Chavis and Brown.

8

Third, Price was convicted of witness tampering in violation of 18 U.S.C. § 1512(b)(1), which prohibits "corruptly pursuad[ing] another person" so as to influence that person's official testimony. "This Circuit has defined 'corrupt persuasion' as persuasion that is 'motivated by an improper purpose.'" *United States v. Gotti*, 459 F.3d 296, 343 (2d Cir. 2006) (quoting *United States v. Thompson*, 76 F.3d 442, 452 (2d Cir. 1996)). Price argues that no rational juror could believe that his letter to Wayne Evans was motivated by an improper purpose. At trial, Evans testified that Price told him he shot Chavis and Brown over drug money. In the relevant letter, sent before the trial, Price wrote to Evans: "Just don't do me dirty, Homey. Give some, not all. Feel me? You know nothing about that Peter Roll." Multiple witnesses testified that "Peter Roll" is code for murder. On these facts, reasonable jurors could conclude that Price was attempting to convince the witness not to testify about all of Price's criminal activities, particularly Chavis's murder. Price's conviction for witness tampering was therefore supported by sufficient evidence.

## III. Rule 33 Motion

After his conviction, Price moved for a new trial pursuant to Federal Rule of Criminal Procedure 33(a), arguing that the jury's verdict regarding the murder and attempted murder of Chavis and Brown went against the weight of the evidence. He contends that he shot Chavis and Brown in self-defense after Brown pulled a gun on him. In support, Price cites the statement he gave to the police and a witness's testimony that Brown told him there had been an argument and a struggle for the gun but that he was not sure whether the gun was Price's. A trial court's decision to deny a Rule 33 motion is reviewed only for abuse of discretion, *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011), and generally "should not be granted unless the trial court is convinced

that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice," *United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003)) (internal quotation marks omitted).  Price's evidence of self-defense does not meet this high standard, especially because substantial evidence weighed against Price's story of self-defense, including Brown's firsthand testimony and forensic evidence suggesting that Chavis was not shot at close range.  The district court therefore did not abuse its discretion in denying Price's Rule 33 motion for a new trial.

We have considered all of Defendant-Appellant's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk